UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTIAN MURAGE,<br>*PLAINTIFF*<br>*V.*<br><br>NAVY FEDERAL CREDIT UNION AND TRANSUNION<br>*DEFENDANTS* | CASE NO: 4:25-CV-1398 |

# COMPLAINT

Plaintiff, complaining of the Defendants, alleges and says:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act),

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. § 1367.
3. Plaintiff Christian Murage is a natural person and resident of Denton County, Texas. He is a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a, (b) and (c).
4. Defendant Navy Federal Credit Union (NFCU or "Navy Fed") is a Virginia entity. They can be served at Navy Federal Credit Union. Attn: Legal Dept/Registered Agent, 820 Follin Lane SE, Vienna, VA 22180. Defendant NFCU is a "furnisher of information" to consumer reporting agencies within the meaning of the FCRA, 15 U.S.C. § 1681s-2 et seq.
5. Defendant TRANS UNION, LLC. (hereafter Trans Union) is a for-profit entity incorporated in Delaware and registered to do business in Texas, and it may be served through its registered agent, The Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Defendant is a "consumer reporting agency," as defined 15 U.S.C §1681a(f)

and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties. Defendant is a Credit Bureau as defined by Texas Finance Code § 392.001(4).

6. Upon information and belief, Transunion disburses such consumer reports to third parties under contract for monetary compensation.

**STATEMENT OF FACTS**

7. From January 2023 through July 31, 2024, Plaintiff Christian Murage lived in Houston, Texas. He was a student at University of Houston for the Spring of 2023 semester, and then he was working in Houston.
8. However, sometime in or around December 2023, Plaintiff learned that someone had taken out an account in his name – what appeared to be a credit card or personal loan – at Navy Federal Credit Union. Prior to this, he had no account at Navy Federal Credit Union and he had not taken out this account either.
9. Plaintiff made electronic disputes to all three credit bureaus as well as contacting Navy Federal Credit Union, explaining that this was not him.
10. The address for the Navy Federal Credit Union account was a Northern Texas town where he had lived – Little Elm – but it was not an address where he had ever resided. The address for this account was 14512 Richmond Circle, Little Elm, Texas 75068.
11. Plaintiff disputed this address on his credit reports and the address was removed. Unfortunately, Navy Federal Credit Union verified his account (despite his disputes and proof of not living at this Richmond Circle address) and so the Navy Federal Credit Union account remained at first on all three credit reports.
12. Plaintiff filled out an FTC affidavit for identity theft and provided that to Navy Federal.

13. In one of his telephone conversations with Navy Federal Credit Union, Plaintiff learned that two individuals had been added as "authorized users" to this Navy Fed account in his name. These individuals were Dylan Javaugn Bishop and Vincent Shearin.
14. Plaintiff could not believe that despite having the names of people who were using this account, Navy Fed would not take it off his credit reports.
15. Plaintiff filled out a police report on or about October 1, 2024 at the request of Navy Fed and he sent this to them. However, they persisted in verifying his account with them as accurate when he made disputes to the credit reporting agencies.
16. The Navy Fed account had a different phone number then had ever been associated with Plaintiff; however, while he could get the phone number taken off his credit reports, Navy Fed persisted in verifying his account and so it remained on Experian and TranUnion.
17. By November 4, 2024, Plaintiff had provided a copy of his latest lease in Houston, which went through June 2024, to Navy Fed at their "security appeals" department. He provided copies of his drivers' license and the police report and asked "What more do y'all want from me??"
18. In or about November 18, 2024, when Navy Fed's "Security Appeals" department had again denied his claim, Plaintiff filed another appeal and provided the name and phone number of the detective in Little Elm who was handling the identity theft for him.
19. Navy Federal responded by saying it would be necessary to contact them by phone.
20. Plaintiff tried this, but still Navy Fed persisted in reporting this account that was allegedly his to the credit reporting agencies.
21. Eventually, Equifax took the Navy Fed account off his report, and then Experian. However Transunion kept reporting this wrong information.
22. Navy Fed, despite the abundance of evidence that this was identity theft, persisted in verifying this debt.

23. At first, the Navy Fed account was paid by the thieves – from December 2023 through March 2024. Then the account went unpaid and was eventually charged off. This was a big hit to Plaintiff, who was working hard to keep his credit strong.
24. As a young person, Plaintiff knew he had not had the time to build a long credit history, which is one factor in credit scores. However, he kept up his payments and at the time Navy Fed began reporting, had few to no derogatories on his account.
25. In August, as a result of the lack of payment on this ID theive's account at Navy Federal Credit Union, Navy Fed closed the credit line.
26. The impact to Plaintiff's credit was immediate. Experian reported that his credit rating went from Good to Poor and one version of his FICO score decreased by 190 points to 520!
27. In November, 2024 Plaintiff learned that his Wells Fargo BNA Card lowered his credit limit as a result of his FICO score being lowered.
28. Plaintiff persisted in disputing repeatedly but Navy Fed continued to verify.
29. January 2025, Plaintiff learned that American Express lowered his credit limit as a result of the reduction in his FICO Score.
30. The reduction of his credit lines caused further damage to his credit score, as it impacted his credit utilization ratio.
31. Plaintiff continued to see the impact of the Navy Fed reporting. He applied for and was denied a Citi Double Cash Card, an a Discover Card, and an Apple Card.
32. Finally, Plaintiff reached out to attorneys for assistance. With the recommendation to send one final dispute, Experian finally quit reporting. However, TransUnion persisted and Navy Fed continued to verify the account.
33. Discover and American Express and Capital One all had gotten information from TransUnion in making their decisions regarding Plaintiff; and TransUnion was reporting the Navy Federal Credit Union charged-off loan.

34. Plaintiff has been seeking to move out to his own apartment and live on his own again but due to the actions of TransUnion and Navy Federal Credit Union, he has not been able to move on.

**COUNT I**

**NEGLIGENT NONCOMPLIANCE WITH FCRA**

**(against defendant TransUnion)**

35. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

36. TransUnion negligently failed to comply with the requirements of FCRA by:

a. failing to comply with the requirements in 15 USC §1681e(b);

b. failing to comply with the requirements in 15 USC §1681i;

c. failing to comply with the requirements in 15 USC §1681b(a); and

d. failing to comply with the requirements in 15 USC §1681g.

37. Plaintiff currently is unaware of all the facts of this case and may learn through discovery of other violations of the FCRA by these defendants. Plaintiff reserves the right to amend this complaint to add such violations as they become known.

38. As a result of defendants' failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, actual damages including lost opportunity to receive credit, increased cost for credit, damage to reputation, invasion of privacy and emotional distress for which he seeks damages in an amount to be determined by the jury.

39. Plaintiff requests attorney fees pursuant to 15 USC §1681o(a).

**COUNT II**

**WILLFUL NONCOMPLIANCE WITH FCRA**

**(against TransUnion)**

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if

fully set forth herein.

41. TransUnion willfully failed to comply with the requirements of FCRA by:

    a. failing to comply with the requirements in 15 USC §1681e(b);

    b. failing to comply with the requirements in 15 USC §1681i;

    c. failing to comply with the requirements in 15 USC §1681b(a); and

    d. failing to comply with the requirements in 15 USC §1681g.

42. Plaintiff currently is unaware of all the facts of this case and may learn through discovery of other violations of the FCRA by these defendants. Plaintiff reserves the right to amend this complaint to add such violations as they become known.

43. As a result of defendants' failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, actual damages including lost opportunity to receive credit, increased cost for credit, damage to reputation, invasion of privacy and emotional distress for which he seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

44. Plaintiff requests attorney fees pursuant to 15 USC §1681n(a).

**CLAIM III**

**NEGLIGENT NONCOMPLIANCE WITH FCRA**

**(against Navy Federal Credit Union)**

45. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

46. Navy Federal Credit Union received notice of Plaintiff's dispute from Plaintiff directly and from all three consumer reporting agencies and negligently failed to comply with the requirements of 15 USC §1681s-2(b).

47. As a result of Navy Federal Credit Union's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including lost opportunity to receive credit, increased cost for credit, damage to reputation, invasion

of privacy and emotional distress for which he seeks damages in an amount to be determined by the jury.

48. Plaintiff requests attorney fees pursuant to 15 USC §1681o(a).

### CLAIM IV

### WILLFUL NONCOMPLIANCE WITH FCRA

### (against Navy Federal Credit Union)

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

50. Navy Federal Credit Union received notice of Plaintiff's dispute from Plaintiff directly and from all three consumer reporting agencies and willfully failed to comply with the requirements of 15 USC §1681s-2(b).

51. As a result of Navy Federal Credit Union's willful refusal to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including lost opportunity to receive credit, increased cost for credit, damage to reputation, invasion of privacy and emotional distress for which he seeks damages in an amount to be determined by the jury as well as punitive damages.

52. Plaintiff requests attorney fees pursuant to 15 USC §1681o(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Actual Damages;
B. Attorney Fees; and
C. Costs and expenses incurred in the action;
D. For the 2nd and 4th claims, exemplary or punitive damages;
E. An order requiring Defendants to correct their credit reporting and collections regarding Plaintiff's debt and to cease collection of the disputed amounts;

F. Such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,



Amy Beth Clark, TX Bar No. 24043761 (admission pending)
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy, Dr.
Katy, Texas 77494
Ph: 210-294-9273
eService: cpfiling@cimentlawfirm.com

Daniel Ciment, TX Bar No. 24042581
daniel@cimentlawfirm.com
Ciment Law Firm, PLLC
4500 Mercantile Plaza Drive, Ste. 300
Fort Worth, TX 76137
Ph: 833-663-3289

Attorneys for Plaintiff, Christian Murage