UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTIAN MURAGE,<br>*PLAINTIFF*<br>V.<br><br>NAVY FEDERAL CREDIT UNION AND TRANSUNION<br>*DEFENDANTS* | CASE NO: 4:25-CV-01398-RWS |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TRANS UNION LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Christian Murage ("Plaintiff") files this Response in Opposition to Defendant Trans Union LLC's ("Trans Union") Motion for Judgment on the Pleadings and respectfully shows the Court as follows:

## I. INTRODUCTION

1. Trans Union is a credit reporting agency – one of the "big three" who gather data on almost every adult in the United States of America and sell this data to lenders, insurance companies, landlords, and potential employers. The people who's data is being trafficked do not get paid for this; instead, Trans Union is paid by those who purchase the data.
2. Because the people in the United States have a right of privacy and because it is their data that is being sold, Trans Union and other credit reporting agencies have a higher amount of regulation than a standard business. They must follow the Fair Credit Reporting Act's rules, which include having procedures to ensure maximum possible accuracy and to reinvestigate data they are promulgating when the human being the data is about says that it is false.

3. Trans Union's Motion for Judgment on the Pleading argues – correctly – that a credit reporting agency is not responsible for determining legal liability on a debt that it reports. If a person purchases an air conditioner and it malfunctions and they dispute the charge, whether or not the purchase owes the lender is not for Trans Union to figure out. They are not a small claims court.

4. However, Trans Union's Motion attempts to stretch this inability to determine legal conclusions too far. Plaintiff alleges he did not have any Navy Federal Credit Union account, the account was for an address he had no connection to and he alleges that he provided evidence of this to Trans Union. Not having an account is a fact. Never living at or being connected to an account's address is a fact. And finally, providing evidence is a factual allegation, ie. "He provided a police report." That is a fact.

5. Trans Union's Motion rests on a mischaracterization of Plaintiff's allegations. This is not a case in which Plaintiff has an account and then disagrees with the lender on some of the charges. Instead, Plaintiff has consistently stated he never had a Navy Federal Credit Union account and furthermore, that the address associated with the NFCU account is not his. (¶¶9-11, Original Complaint; ¶¶ 9-11 on Plaintiff's First Amended Complaint.)

## II. Facts Alleged in Plaintiff's Complaint That show Trans Union's Motion must be Denied

6. When Mr. Murage first disputed the NFCU account on his Trans Union credit report, he also disputed the false address and a false phone number. This was information he gave directly to Trans Union before the lawsuit was filed. (¶¶9-11, Original Complaint; ¶¶ 9-11 on Plaintiff's First Amended Complaint.)

7. Before the lawsuit was filed, Trans Union received the disputes from Mr. Murage and removed the false address, but refused to remove the NFCU account. (¶9 Original Complaint; ¶9 on Plaintiff's First Amended Complaint.)

8. Eventually Mr. Murage hired a law firm who wrote a dispute letter for him (¶ 32 and Ex A to First Amended Complaint; ¶ 32 of Plaintiff's Original Complaint). Plaintiff mailed this certified mail to Trans Union along with the following evidence:

   a. A copy of his drivers license, showing his correct address "2705 Bahia Rio

Drive";

b. A copy of his social security card with his number on it;

c. A copy of the Identity Theft Report he had filed with the fraudulent address being labelled as fraudulent – "14512 Richmond Circle".

d. A copy of the police report which states that when speaking with an employee of NFCU, he was told that the address the NFCU credit card was sent to was "14512 Richmond Circle". (¶ 32 and Ex A to First Amended Complaint.)

9. Trans Union received an address for Plaintiff from NFCU – it was the false Richmond Circle address. (¶10 Original Complaint; ¶10 on Plaintiff's First Amended Complaint.)

10. Plaintiff disputed this address and Trans Union removed it from his credit report. (¶11 Original Complaint; ¶11 on Plaintiff's First Amended Complaint.)

11. Trans Union received the false account information from NFCU. (¶¶11, 28 Original Complaint; ¶¶11, 28 on Plaintiff's First Amended Complaint.)

12. Plaintiff disputed this false account information and Trans Union refused to remove it. (¶¶11, 28, 32, 33 Original Complaint; ¶¶11, 28, 32,33 on Plaintiff's First Amended Complaint.)

13. Trans Union failed to note the connection between the false address provided by NFCU and the false account provided by NFCU, and they continued to report the false account.

14. These allegations present concrete factual questions concerning whether Trans Union maintained maximum possible accuracy with respect to Plaintiff's credit report and whether Trans Union reasonably investigated the resulting dispute.

15. These allegations do not require Trans Union to adjudicate an abstract legal defense to an otherwise valid debt.

## III. LEGAL STANDARD

16. The standard governing a Rule 12(c) motion is the same as the standard governing a Rule 12(b)(6) motion. The complaint survives when it contains sufficient factual matter, accepted as true, to state a facially plausible claim, and

the Court must draw all reasonable inferences in favor of the nonmovant. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2021).

17. "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain. In ruling, the district court is confined to the pleadings and must accept all allegations contained therein as true." (internal cites omitted). *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

18. A Rule 12(c) motion tests the legal sufficiency of the pleading; it does not permit the Court to weigh competing factual accounts or determine which party's evidence is more persuasive. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2021). Judgment on the pleadings is therefore inappropriate when disputed factual issues, if resolved in the nonmovant's favor, would defeat the requested judgment. *Id.*

19. Interpreting both *Ashcroft v. Iqbal,* 556 U.S. 662, 678 and the rule that a 12(c) motion should be interpreted similarly to a 12b(6) motion, the fifth circuit court of appeals stated a two-part reasoning: "First, we must identify the complaint's well-pleaded factual content. In doing so, we set aside "any unsupported legal conclusions," the truth of which "we cannot assume. Second, we ask whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility' threshold. …[This is a] context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (internal cites omitted.)

20. The Fair Credit Reporting Act ("FCRA") requires a consumer reporting agency to follow reasonable procedures to assure the maximum possible accuracy of information in a consumer report.15 USCS §1681e. When a consumer disputes the completeness or accuracy of an item in his file, the agency must conduct a reasonable reinvestigation to determine whether the information is inaccurate and must record its current status or delete it 15 USCS §1681i.

21. Plaintiff has alleged facts supporting both that there was a factual inaccuracy and that Trans Union did not properly reinvestigate when it received Plaintiff's dispute.

## IV. PLAINTIFF HAS ALLEGED AN OBJECTIVELY VERIFIABLE FACTUAL INACCURACY THAT SUPPORTS HIS §§ 1681E(B) AND 1681I CLAIMS AGAINST TRANS UNION

22. Plaintiff's allegation that he did not open, authorize, or own the NFCU account is a factual assertion capable of verification through records concerning the account's origination, identifying information, address, telephone number, users, and transactions.

23. Trans Union argues that in order to pursue claims against it, Plaintiff must have a factual inaccuracy. Plaintiff agrees. Plaintiff's complaint and amended complaint both describe the fact that he did not open the account and he did not live at the address NFCU provided with the account. Plaintiff gave an abundance of evidence to Trans Union before his lawsuit was even filed and his Original Complaint referred to the disputes by which the evidence was provided.

24. In an abundance of caution, Plaintiff is currently seeking to amend his complaint to add the exact letter and evidence which Trans Union had received. While Plaintiff is aware through the discovery which has already occurred that Trans Union had a copy of his dispute and the evidence he had provided, he had not previously put these exact details in the pleadings.

25. However, Trans Union has chosen to file a motion for judgment that relies only on Plaintiff's pleadings. This was a choice Trans Union made despite having completed a deposition and written discovery of Plaintiff. Therefore, Trans Union must accept that in a judgment on the pleadings, the court accepts the Plaintiff's <u>factual</u> allegations as true.

26. Trans Union had in its possession the Plaintiff's driver's license with his actual address, an address which it could compare to any of his account other than the one from NFCU. This is not a law – it is a fact alleged in the Amended Complaint.

27. Trans Union had in its possession the Plaintiff's police report, wherein he had sworn to an officer that he an employee of NFCU had told him the account that was in his name had the Richmond Circle address. This is not a law – it is a fact alleged in the Amended Complaint.

28. Trans Union had in its possession the Plaintiff's FTC identity theft report, wherein he had sworn under penalty of perjury that he had no connection to the Richmond Circle address – the same address Trans Union could see was being

provided by NFCU, and the same address that Trans Union had taken off Plaintiff's consumer credit report when he disputed it. This is not a law – it is a fact alleged in the amended Coomplaint.

29. Any information Trans Union felt it still needed for its reinvestigation could have been provided by NFCU. But Trans Union took the information from Plaintiff and continued, despite the evidence, to report the false information that there was a NFCU loan belonging to him. Trans Union does not even deny this fact – it reported the NFCU loan and continues to do so today.

30. The factual question is – does Plaintiff even have an NFCU account? Plaintiff provided factual evidence to Trans Union that he did not and this is attached to the First Amended Complaint and referred to in the Original Complaint. Since the evidence was in Trans Union's custody and control before the Original Complaint was filed, it seems awkward for them to now argue they had no facts that they could verify.

## V. TRANS UNION'S WORD PLAY DOES NOT CHANGE THE FACT THAT THE CASES IT CITES ARE NOT ON POINT. PLAINTIFF'S ALLEGATIONS CONCERN VERIFIABLE FACTS.

31. Trans Union makes this argument in their Motion for Judgment, "Plaintiff, while conceding the NFCU account was eventually charged off for non-payment, asserts that the debt was not his obligation because incurred as the result of identity theft by the two individuals that were added to the account as authorized users. Id. ¶ 8, 13, 23. It is on this key point that Plaintiff's claims fail. Instead of alleging a factual inaccuracy, Plaintiff raises a legal dispute about who was responsible to pay the Account and collaterally attacks the underlying debt with NFCU– precisely the type of dispute that is not actionable under the FCRA."

32. This is the perfect example of Trans Union trying to twist Plaintiff's claims to fit the fact pattern Trans Union wants to fight – the classic "straw man".

33. First, Plaintiff's complaint alleges a very basic fact – he did not have any NFCU account. ¶ 8. Trans Union leaves this factual allegation out of their argument.

34. The reason Plaintiff is not responsible for the NFCU debt is that he had no NFCU account. The rest of the information he provided to Trans Union before the suit was filed was evidence supporting the simple fact that he had no NFCU account. Neither evidence nor facts are legal arguments.

35. The allegation regarding the authorized users, in paragraph 13 of his complaint, states that NFCU told Plaintiff about the authorized users. Plaintiff's FTC identity theft report, which he provided to Defendant Trans Union, noted this same thing - that these two names and the Richmond Circle address may be tied to the thieves.

36. Trans Union argues that Plaintiff "admits" an account was opened in his name and treats that allegation as an admission that the reported account belonged to him. Plaintiff is not admitting he opened an account and that is clear from the factual allegations.

37. However, Trans Union did accept Plaintiff's dispute that he did not live at the Richmond Circle address. After his electronic dispute, Trans Union removed the Richmond Circle address from his credit report that it provided to him.

38. Trans Union seemingly could tell the Richmond Circle address dispute relied on a fact. Even before receiving Plaintiff's drivers license or any other evidence, it removed the false address.

39. However, when faced with the account that had provided Trans Union with that same false address, Trans Union argues that no one could ever determine liability for this account because there are no verifiable facts.

## VI. PLAINTIFF'S FCRA CLAIMS ARE BASED ON A FACT – HE DID NOT OPEN THE NFCU ACCOUNT AND TRANS UNION COULD HAVE FIGURED THIS OUT BY LOOKING AT THEIR OWN RECORDS.

40. Trans Union argues that because Plaintiff's complaint alleges that one or more identity thieves opened an account in Plaintiff's name, used the account, then failed to pay it off, that there is no objectively or readily verifiable factual inaccuracy in what Trans Union reported. This argument fails.

41. Plaintiff alleges that he did not have an account with NFCU and Trans Union reported on his credit report that he did. Having an account is a fact.

42. Plaintiff alleges that the account was connected to the Richmond Circle address (fact) and that he did not live or have any connection with this address (fact) and he provided his driver's license to show his actual address (evidence supporting the fact that he did not have a connection to account.)

43. The addresses are a verifiable fact that Trans Union knew about and did not

reinvestigate.

44. NFCU provided an account and provided the Richmond Circle address connected to it. Trans Union published both on Plaintiff's report. But when Plaintiff disputed both, only one came off – the address. Trans Union continued to publish the account, even after Plaintiff supplied more evidence that supported the fact that he did not have an NFCU account.

45. Tran Union argues that courts have found credit reporting agencies cannot reinvestigate disputes if they are not objectively or readily verifiable. However, the cases it refers to then are not on point to Plaintiff's facts.

46. Trans Union cites to the unpublished 11th circuit case *Rozov v. Bank of America, N.A.*, 2025 U.S. App. LEXIS 14033 as an example of a court finding that only if a credit reporting agency could objectively and readily verify the dispute could a Plaintiff support a claim against them under the FCRA. However, *Rozov* dealt with the plaintiff's depositing a fraudulent check and Bank of America reporting that a fraudulent check was deposited and the credit reporting agency reporting this. There was not even a false item. *Id.* Plaintiff alleges a false statement was reported in that he had no NFCU account..

47. Trans Union cites to a 2nd circuit case, *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) and again, this case's facts are easily distinguished. Here, perhaps not knowing that a student loan requires an adversary proceeding to be discharged in bankruptcy, Plaintiff sued Experian under the FCRA for reporting a balance owed on his student loan. The District court concluded that the loan was not discharged and the balance was owed. *Mader* lost because there was nothing inaccurate reported. *Id.* Plaintiff did allege factual inaccurate reporting.

48. Trans Union also relies on the Northern District of Alabama's ruling in *Dorsey v. Trans Union, LLC* . This is a summary judgment opinion where defendant ICS had been sued by Plaintiff for reporting to credit reporting agencies that she owed money to AT&T. ICS argued that her liability was not "objectively and readily verifiable." The court denied the motion. The court states, "No party disputes that if Ms. Dorsey received services from AT&T, she owed the debt, and if AT&T failed to provide those services, she did not. Ms. Dorsey testified that she did not receive the services from AT&T. Taking the facts in the light most favorable to

Ms. Dorsey, the answer to the contractual dispute is objectively and readily verifiable." *Dorsey v. Trans Union, LLC*, No. 2:22-cv-1489-ACA, 2024 U.S. Dist. LEXIS 120136, at *11 (N.D. Ala. July 9, 2024).

49. This is similar to Plaintiff's allegation that he did not have any account with NFCU and that the address associated with the NFCU was also not connected to him. No one is arguing that if Plaintiff had no NFCU account that he owed the money to NFCU.

50. Finally, in *Reyes v. Equifax Info. Servs. LLC* No. 4:21-CV-639-SDJ, 2024 WL 1308000, at *2 (E.D. Tex. Mar. 27, 2024), *aff'd* 140 F.4th 279 (5th Cir. 2025), the court found that Mary Reyes' could not argue that Equifax should have been able to determine that some of the charges on her Citibank account were not hers. This case is, like Plaintiff's, about identity theft. However, Ms. Reyes case dealt with specific charges, not the existence of an account. *Id*. Again, this is distinguishable from Plaintiff's allegations.

## VII. Plaintiff's Claims Are Not an Impermissible Collateral Attack.

51. Trans Union relies heavily on decisions holding that an FCRA action cannot be used to collaterally attack the legal validity of an underlying debt. That principle does not dispose of Plaintiff's claims as there is no underlying debt.

52. A collateral legal challenge arises when resolution depends on determining the legal enforceability of an otherwise existing obligation. Consumer reporting agencies are not required to adjudicate legal disputes about the validity of debts.

53. . Plaintiff, however, does not allege that he opened the account but later acquired a contractual or legal defense to payment. He alleges that he never opened or authorized the account at all.

54. The distinction is dispositive at the pleading stage. Trans Union's theory relies on a Plaintiff who has a debt that may or may not be legally enforceable. That is not the case here. Plaintiff alleges no account, no connection at all to NFCU. There is no legal question about the debt.

55. The case law cited is again not on point. In another unpublished case *Glass v Bread Fin. Holdings, Inc.* No. 6:23-CV-686, 2024 WL 3100758, at *3 (W.D. Tex. May 20, 2024), report and recommendation adopted sub nom. *Glass v. Midland Credit*

*Mgmt., Inc.*, No. W-23-CV-00686-ADA, 2024 WL 3093493 (W.D. Tex. June 21, 2024), the court found that where Plaintiff first took out a loan and then argued that her account was "wrongfully froze(n)," that the credit reporting agency was not at fault for its reporting. The court specifically found that no one disputed that the debt did not exist – Plaintiff in *Glass* said she had an account with the furnisher.

56. Mr. Murage has no account with NFCU to attack collaterally. Not even Trans Union directly contradicts this – defendant does not argue that if Plaintiff never had an NFCU account that he is still liable. Plaintiff's pleadings allege he has no such debt.

## VIII. THE ALLEGATIONS OF THE COMPLAINT SUPPORT AN INFERENCE OF WILLFUL VIOLATION OF THE FCRA

57. Trans Union argues that the Complaint contains no facts supporting an inference that it acted knowingly or recklessly. However, it bases this not on the factual allegations of the Complaint or Amended Complaint.. The cause of action clearly refers to the factual allegations when stating that it "repeats and realleges the allegations set forth in Paragraphs 1 through 34."

58. Plaintiff alleges that Trans Union received a detailed written dispute supported by evidence and that Trans Union continued to report that he had an account with NFCU despite deleting the bad address attached to that account when Plaintiff disputed. These allegations permit a reasonable inference that Trans Union failed to have procedures to support a reporting of maximal accuracy and it failed to reinvestigate as the required.

59. Plaintiff separately pleads negligent and willful noncompliance and seeks the relief corresponding to each theory. Whether Trans Union's conduct was negligent, knowing, or reckless depends on the information available to it and the procedures it employed. The Court should not foreclose the willfulness claim before those facts are developed, and that is not something that is done with the complaint language alone.

## IX. THE COURT SHOULD NOT DENY PLAINTIFF'S RIGHT TO FURTHER AMEND THE COMPLAINT SHOULD DEFENDANT'S MOTION BE FOUND PERSUASIVE

60. Trans Union contends that amendment would be futile because Plaintiff cannot

allege an objectively verifiable inaccuracy and cannot avoid characterizing his action as a collateral attack. That premise is incorrect. Plaintiff has already alleged a specific factual inaccuracy – he does not have an NFCU account and yet one was reported as his by Trans Union.

61. If there is more clarity and detail required in his allegations, Plaintiff alternatively requests leave to amend.

## X. CONCLUSION AND PRAYER

Plaintiff Christian Murage respectfully requests that the Court deny Defendant Trans Union LLC's Motion for Judgment on the Pleadings. In the alternative, if the Court determines that any claim requires additional factual allegations, Plaintiff requests leave to amend rather than dismissal with prejudice.

Respectfully submitted,



Amy Beth Clark, TX Bar No. 2404376
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy, Dr.
Katy, Texas 77494
Ph: 210-294-9273
eService: cpfiling@cimentlawfirm.com

Daniel Ciment, TX Bar No. 24042581
daniel@cimentlawfirm.com
Ciment Law Firm, PLLC
4500 Mercantile Plaza Drive, Ste. 300
Fort Worth, TX 76137

Ph: 833-663-3289

Attorneys for Plaintiff, Christian Murage

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

/s/ Amy Beth Clark
Amy Beth Clark