**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN MURAGE,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION and TRANSUNION,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:25-cv-01398-RWS |

**DEFENDANT TRANS UNION LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

COMES NOW, Defendant Trans Union LLC ("Trans Union"), through the undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits its Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support (the "Motion"), and would respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiff Christian Murage ("Plaintiff") filed his First Amended Complaint asserting claims against Trans Union for violations of §§ 15 U.S.C. 1681e(b), 1681i, 1681b(a) and 1681g of the Fair Credit Reporting Act ("FCRA"). Specifically, Plaintiff alleges Trans Union reported inaccurate information and failed to conduct a reasonable reinvestigation of his dispute regarding a Navy Federal Credit Union ("NFCU") account, which he claims is fraudulent due to identity theft. *See* Amended Complaint ("Compl."), ECF No. 33. However, the NFCU account at issue involves a unadjudicated legal dispute between Plaintiff and Navy Federal Credit Union, that Trans Union is not required to resolve.

Dismissal is warranted because the information disputed by Plaintiff is not actionable under the FCRA as it would require a consumer reporting agency ("CRA"), such as Trans Union, to

conduct complex fact-gathering and in-depth legal analysis—an analysis that is typically reserved for furnishers and courts to perform. Plaintiff is required to show his claims are based on an alleged inaccuracy that is objectively and readily verifiable and because he cannot do so Plaintiff's §§ 1681e(b) and 1681i claims fail as a matter of law. Furthermore, Plaintiff's Complaint is void of any facts that would support his §§ 1681b, 1681g or willfulness claims against Trans Union. Accordingly, Plaintiff's Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).

## II. FACTUAL BACKGROUND

On December 16, 2025, Plaintiff filed a Complaint against Trans Union claiming violations of the FCRA due to the reporting of a purportedly fraudulent account ("Account") furnished by NFCU, which he claims stemmed from identity theft that allegedly occurred sometime on or about December 2023. ECF No 1 ("Compl.") ¶ 8. Trans Union filed a Motion for Judgment on the Pleadings on September 10, 2026, and Motion to Stay on September 15, 2026. ECF Nos. 27, 28. On September 22, 2026, Plaintiff filed his First Amended Complaint ("FAC") against Trans Union alleging basically the same facts and exact same causes of action as in his original Complaint. *See generally* ECF Nos. 1, 33. Plaintiff claims that he lived in Houston, Texas from January 2023 to July 2024 but that the Account was opened in 2023 using an address in his hometown of Little Elm, Texas but was not the same address where he once resided. ECF No. 33 ¶¶ 7, 8, 10.

Plaintiff's FAC alleges that he contacted NFCU insisting that he did not open the Account. *Id.* ¶ 9. Plaintiff further claims that he directly provided NFCU with an FTC Identity Theft Affidavit and police report, but they refused to remove the debt from his credit reports. *Id.* ¶¶ 12, 14-15. He also alleges that he appealed NFCU's decision that he was responsible for the debt with its security appeals department, but they also denied his claims on more than one occasion. *Id.* ¶¶ 17-20. Plaintiff further claims that when he disputed the Account with the CRAs, NFCU verified it as accurately reporting. *Id.* ¶¶ 9, 11, 15-17, 22. Unhappy with NFCU's determination that he is

liable for the debt, Plaintiff now tries his hand at suing Trans Union in hopes of obtaining a different result. *See generally* FAC.

Plaintiff's FCRA claims against Trans Union fail as a matter of law. Moreover, any further amendment would be futile because Plaintiff has not and cannot cure the fundamental flaws in his Complaint. Accordingly, the Court should grant Trans Union's Motion with prejudice and without leave to amend.

## III. STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff's lawsuit against Trans Union should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim for relief under the FCRA.

## IV. APPLICABLE LEGAL STANDARD

### A. 12(b)(6) Failure to State a Claim.

The Complaint against Trans Union fails to assert a viable claim for relief under the FCRA and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The motion to dismiss standard requires a plaintiff to plead facts sufficient to establish a claim that is plausible on its face. *Guidry v. Am. Public Life Ins., Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations, legal conclusions, and "unwarranted factual inferences" will not survive a motion to dismiss. *Gentilello*, 627 F.3d at 544 (quoting *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005)).

When considering a motion to dismiss, the Supreme Court instructed lower courts to consider "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, the Court is not required to accept, as true, legal conclusions couched as factual allegations. *Id.* Second, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). While all material allegations must be taken as true in considering a Rule 12(b)(6) motion, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive dismissal. *Iqbal*, 556 U.S. at 678.

## V. ARGUMENTS AND AUTHORITIES

### A. Plaintiff's §§ 1681e(b) and 1681i Claims Fail Because He Has Not Alleged a Factual Inaccuracy that is Objectively and Readily Verifiable as Required by Fifth Circuit Authority.

As a threshold matter, the Fifth Circuit and Other Courts have consistently held that a plaintiff must prove a factual inaccuracy to establish claims under the FCRA. *See Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) ("We join the other circuits in concluding that inaccuracy is a threshold requirement for § 1681i claims."); *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) (explaining that "[i]n order to pursue a cause of action based upon willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (finding that "the weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail"); *Rodriguez v. Trans Union*, No. 1:19-CV-379-LY, 2019 WL 5565956, at *5 (W.D. Tex. Oct. 28, 2019) (dismissing §§ 1681e(b) and 1681i claims where plaintiff failed to allege an inaccuracy).

Plaintiff has the burden of alleging a factual inaccuracy and failure to do so is fatal to his

claims. *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9 (11th Cir. 1991); *Watkins v. Experian Info., Sols., Inc.*, No. 613CV00239WSSJCM, 2014 WL 12879669, at *5 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, No. W-13-CV-239, 2014 WL 12879668, at *1 (W.D. Tex. Oct. 3, 2014). Where resolution of a dispute requires a consumer reporting agency to determine whether a consumer is legally liable for a debt, rather than verify a concrete factual error, no actionable inaccuracy exists as a matter of law. *See Reyes*, 140 F.4th at 289. Here, Plaintiff's claims fail because they are <u>not</u> based on a cognizable inaccuracy that is "objectively and readily verifiable" and must be dismissed.

**1. Plaintiff's FCRA Claims Fail Because They are Not Based on a Cognizable Inaccuracy that Trans Union is Required to or Capable of Resolving.**

Plaintiff admits that in December 2023 an account with NFCU was opened in his name, with an address in a city where he used to live, two other individuals were added as authorized users, charges were made and paid by the authorized users for a short time and the debt was eventually charged off by NFCU. ECF No. 33 ¶¶ 8, 10, 13, 23. However, these allegations do not identify any objectively and readily verifiable factual inaccuracy in the information Trans Union reported. Plaintiff, while conceding the NFCU account was eventually charged off for non-payment, asserts that the debt was not his obligation because it was incurred as the result of identity theft by the two individuals (living in his hometown) that were added to the account as authorized users. *Id*. It is on this key point that Plaintiff's claims fail. Instead of alleging a factual inaccuracy, Plaintiff raises a legal dispute about who was responsible to pay the Account and collaterally attacks the underlying debt with NFCU– precisely the type of dispute that is not actionable under the FCRA. *See Reyes, at* 288-289.

Courts have determined that CRAs are not qualified or required to reinvestigate consumer disputes that, as alleged, do not show the inaccuracy or incompleteness is objectively and readily verifiable. *See Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921, at *3 (11th Cir. June

9, 2025) (fraud allegations not objectively and readily verifiable); *Ward v. National Credit Systems, Inc.*, 182 F.4th 918, 935 (10th Cir. 2026) (Plaintiff's claims of identity theft are not type of straightforward application of law to facts that even a furnisher could objectively and readily verify); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)("[a]ccuracy" under the FCRA "requires a focus on objectively and readily verifiable information."); *Dorsey v. Trans Union*, No. 2:22-cv-1489-ACA, 2024 WL 3362466, at *4 (N.D. Al. July 9, 2024) (citing *Holden v. Holiday Inn Clubs Vacations, Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024)) (holding in FCRA dispute that "the disposition question is whether the answer to [plaintiff's] contractual dispute is 'objectively and readily verifiable.'").

Section 1681e(b) requires an FCRA plaintiff to plead and prove that: (1) inaccurate information was included in a consumer report, (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure the maximum possible accuracy of the consumer report, (3) plaintiff suffered a cognizable injury, and (4) plaintiff's injury was caused by defendant's inclusion of the inaccurate entry. *See Saunders v. Equifax Info. Servs. LLC*, No. 16-CV-00525-LY, 2017 WL 3940942, at *3 (W.D. Tex. Aug. 3, 2017)(citing *Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013).

Likewise, Section 1681i requires an FCRA plaintiff to plead and prove that (1) his consumer credit file contains inaccurate information; (2) plaintiff disputed the accuracy of information on her credit file directly with defendant; (3) defendant did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file; (4) the defendant's noncompliance was negligent or willful; (5) plaintiff suffered injury; and (6) the injury was caused by defendant's failure to reinvestigate. *See Potter v. GreenSky, LLC*, No. 5:19-CV-00581-JKP, 2019 WL 5295494, at *2 (W.D. Tex. Oct. 18, 2019) (citation omitted).

Plaintiff's claims are meritless because the alleged "inaccuracy" arose not from any objectively false information in Trans Union's reporting, but from his legal dispute over responsibility for the NFCU debt. Plaintiff contends that the Account is inaccurate solely because the account was the result of identity theft. *See generally* ECF No. 33. In other words, Plaintiff's theory depends entirely on a contested issue of liability, not on any demonstrable factual error in the Account itself. The FCRA does not require Trans Union to adjudicate the legal validity of an underlying debt or the legal duties between Plaintiff and third parties or recharacterize a furnisher-reported account based on Plaintiff's unilateral assertions. *See Reyes*, 140 F.4th 279. Because an actionable inaccuracy must be "objectively and readily verifiable," and Plaintiff's theory rests exclusively on a legal dispute regarding the validity of the debt, rather than a factual inaccuracy, his claims fail as a matter of law.

**2. Courts Have Routinely Held That Disputes Regarding Identity Theft Are Not Objectively Verifiable as Required to Maintain an FCRA Claim.**

Claims of identity theft or fraud do not present issues that are objectively and readily verifiable. *See Rozov*, 2025 WL 1620921, at *3. ("confirming Martino's purported innocence was not the type of 'straightforward application of law to facts' that Early Warning could objectively and readily verify."); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) ("Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation."); *Buser v. Experian Info. Sols., Inc.*, No. 8:23-CV-1881-TPB-NHA, 2025 WL 90069, at *3 (M.D. Fla. Jan. 14, 2025) ("Claims of forgery are often complicated and require court resolution" and such disputes are "not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer."); *Reyes v. Equifax Info. Servs.*, LLC, No. 4:21-CV-639-SDJ, 2024 WL 1308000, at *2 (E.D. Tex. Mar. 27, 2024), *aff'd* 140 F.4th 279 (5th Cir. 2025) ("First, Reyes cannot make the threshold showing that a report contains inaccurate

information if the alleged inaccuracy is based on a not-yet-adjudicated position that the debt is not legally valid" and "[the] limited timeframe [under the FCRA to reinvestigate] is incompatible with any alleged duty to decide complex legal disputes over the validity of a reported debt.").

In *Reyes*, the consumer sued Equifax alleging it negligently and willfully violated Sections 1681e(b) and 1681i of the FCRA by reporting and verifying fraudulent charges on a Citibank account. The Fifth Circuit affirmed summary judgment for Equifax and "join[ed] the other circuits in holding that consumer reporting agencies are not required to investigate the legal validity of disputed debts under the FCRA." *See Reyes*, 140 F.4th at 289. The court came to this conclusion after determining that disputes of identity theft are not "objectively and readily verifiable" by a CRA when performing a reasonable reinvestigation. *See id.* (collecting cases).

In *Rozov*, the consumers sued Early Warning Services alleging it negligently and willfully violated Sections 1681e(b) and 1681i of the FCRA by reporting and verifying a "checking account fraud" notation on a Bank of America account after plaintiffs claim they were the victim of a check cashing employment scam. *See Rozov*, 2025 WL 1620921 at *1-2. The Eleventh Circuit held, "[w]e do not see how Early Warning, *a consumer reporting agency*, could objectively and readily verify whether Martino intended to defraud Bank of America when he deposited a fraudulent check. And this is especially true where Bank of America itself confirmed the accuracy of its reporting to Early Warning." *Id.* at *3 (internal citations omitted) (emphasis in original). The court rejected plaintiffs' argument that the CRA should have done more when presented with an FBI report supporting plaintiffs' dispute:

> Plaintiffs argue that by providing Early Warning with their FBI victim report and conveying similar information to Bank of America they demonstrated that this determination was objectively and readily verifiable. We disagree. Early Warning would still need to confirm the veracity of the allegations Plaintiffs provided to the FBI. And the same is true for the information Plaintiffs provided Bank of America; without simply taking Martino at his word, his

> protestations of innocence do not demonstrate that his innocence is objectively and readily verifiable.

*Id.*

In *Buser*, the consumer alleged that Enium Capital Group violated the FCRA by reporting an account to the CRAs after a salesperson opened a loan without his consent for the installation of a solar energy system. *See Buser* 2025 WL 90069 at *2. The crux of the case centered on Mr. Buser's allegation that he believed the salesperson forged his electronic signature on the loan documents – similar to what a family member would have to do in order to open a fraudulent account in Plaintiff's name in this matter. *See id.* at *3. The court held that determining if a signature on a loan document was forged is "often complicated and require[s] court resolution" and as such was "'not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer.'" *Id.* at *7-8 (quoting *Holden*, 98 F.4th at 1368).

Similar to these cases, Plaintiff alleges that the NFCU account was the result of identity theft. Here, Plaintiff claims that the existence of the account itself is inaccurate, and the result of identity theft. However, for Trans Union to know whether the NFCU account is, in fact, the result of identity theft, Trans Union would have to conduct a fact-intensive analysis of the sort that courts would typically perform. The dispute raised by Plaintiff is simply *not* the type that can be objectively and readily verified by Trans Union. Accordingly, Plaintiff's §§ 1681e(b) and 1681i claims fail.

**3. Plaintiff's Complaint Also Fails as An Improper Collateral Attack.**

In the alternative, Plaintiff's claims fail as an impermissible collateral attack on a debt that owed to NFCU. *Ray v. Experian Info. Servs., Inc.*, 2025 WL 1994400, at *2 (N.D. Tex. Jul7 18, 2029) (finding Plaintiff "cannot demonstrate that his claims amount to more than collateral attacks"). In short, Plaintiff's claims arise from a legal dispute with NFCU—an issue that CRAs such as Trans Union cannot resolve under the FCRA.

Courts have routinely held that consumers may not use the FCRA to collaterally attack the validity of a debt. *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) (explaining that credit bureaus are "not tribunals" and that "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims"). Most recently, in *Reyes*, the Fifth Circuit found "persuasive the reasoning of the Collateral Attack Cases[1] and join[ed] the other circuits in holding that [CRAs] are not required to investigate the legal validity of disputed debts under the FCRA." *Reyes*, 140 F.4th 279, 289. In that case, the plaintiff alleged that she did not owe the debt on the account at issue because she "is not liable for charges that are fraudulent." *Id.* at *5. The Fifth Circuit affirmed the district court's ruling that "the FCRA does not provide a vehicle for [the plaintiff] to challenge the legal validity of her debt to [the furnisher] by suing [the CRA] for accurately reporting that debt." *Id.* at 287 (citing *DeAndrade*, 523 F.3d at 68 (claim under § 1681i cannot prevail because consumer was "launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency".

A court in the Western District of Texas recently resolved a similar case in favor of the CRAs. In *Glass v. Bread Fin. Holdings, Inc.*, No. 6:23-CV-686, 2024 WL 3100758, at *3 (W.D. Tex. May 20, 2024), *report and recommendation adopted sub nom. Glass v. Midland Credit Mgmt., Inc.*, No. W-23-CV-00686-ADA, 2024 WL 3093493 (W.D. Tex. June 21, 2024), the court granted the CRAs' Motion for Judgment on the Pleadings and denied Plaintiff's request for leave to amend. In that case, the plaintiff took out a loan from the defendant furnisher for a medical

---

1 The Court was primarily referring to DeAndrade, Carvalho, Denan, Chaitoff, Wright, Gorman, and Mader. *See* Reyes, 140 F.4th 279, 287.

procedure and later alleged that the furnisher "wrongfully froze her account . . . making it impossible to make payments." *Id*. at *1. The court noted that, the plaintiff did "not allege that the debt does not exist or is reported in the wrong amount"—instead, Plaintiff attacked the validity of the account. *Id*. at *2. The court held that "to determine the ***proper status of the account***, the CRA Defendants would have to resolve the ongoing legal dispute between [the plaintiff and the furnisher]" and "[t]he FCRA imposes ***no*** such obligation." *Id*. (citing *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ("A reasonable investigation . . . does not require CRAs to resolve legal disputes about the validity of the underlying debts they report") (emphasis added).

The court then cautioned:

> Courts widely recognize that the FCRA is ***not*** a vehicle for collateral attacks over the validity of consumer debts. *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019). If a lender's legal failure creates a misreported account, CRAs are not required to apply the law to resolve those parties' legal disputes. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021). ***Because any misreporting that occurred was due to legally disputed issues, the FCRA does not provide a claim for the CRA Defendants' alleged misreporting.*** *See id*.
>
> *Glass*, 2024 WL 3100758, at *2 (emphasis added); see also *Reyes*, at *3 (clarifying that "the FCRA itself demonstrates that furnishers are better positioned to determine the legal validity of debts, and consumers cannot collaterally attack their debts by suing CRAs.")

Plaintiff's FCRA claims here are nothing more than a collateral attack to challenge the validity of the account with NFCU, and as such, Plaintiff's FCRA claims against Trans Union must be dismissed.[2]

### B. Plaintiff's §§ 1681g and 1681b Claims Fail as He Has Alleged No Facts to Support the Plausibility of Such Claims

[2] Without any viable FCRA claim, Plaintiff's §§ 1681n and 1681o claims similarly fail.

Plaintiff's Complaint alleges that Trans Union negligently and willfully violated §§ 1681g and 1681b(a) of the FCRA. Section 1681g requires CRAs to disclose to consumers "all information in the consumer's file" at the time a consumer makes a request for such disclosure. 15 U.S.C. § 1681g(a)(1). Nowhere in Plaintiff's Complaint does he allege that he requested his consumer file from Trans Union or that Trans Union failed to provide him with all information contained in his consumer file. *See generally* Compl. Plaintiff makes only two (2) statements regarding § 1681g: "Trans Union negligently failed to comply with the requirements of FCRA by… failing to comply with the requirements in 15 USC § 1681g" and "Trans Union willfully failed to comply with the requirements of FCRA by... failing to comply with the requirements in 15 USC § 1681g." *See* Compl. ¶¶ 36, 41.

Section § 1681b(a) limits the permissible purposes for which a CRA may furnish a consumer report to a third party. *See* 15 U.S.C. § 1681b(a). Once again, Plaintiff sets forth no facts alleging that Trans Union provided his consumer report to a third party without a permissible purpose. Likewise, Plaintiff makes only two (2) statements regarding § 1681b(a): "Trans Union negligently failed to comply with the requirements of FCRA by… failing to comply with the requirements in 15 USC § 1681b(a)" and "Trans Union willfully failed to comply with the requirements of FCRA by... failing to comply with the requirements in 15 USC § 1681b(a)." *Id.* ¶¶ 36, 41.

Plaintiff's bald §§ 1681g and 1681b(a) claims against Trans Union are precisely the kind of conclusory allegations and legal conclusion that cannot survive a motion for judgments on the pleadings. *See Gentilello*, 627 F.3d at 544. The court is not required to accept, as true, legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Plaintiff has not alleged and cannot allege *any* facts that would tend to show that his §§ 1681g and 1681b(a) claims are plausible

on their face and thus has failed to state a claim for relief under such sections. *See Guidry*, 512 F.3d at 180. Plaintiff's claims should be dismissed with prejudice.

**C. Plaintiff Has Failed to State a Claim for Willful Violations of the FCRA.**

Even if Plaintiff could get past the issue that he failed to allege an inaccuracy and neglected to plead any facts supporting his §§ 1681g and 1681b(a) claims, which he cannot, his willfulness claims for statutory and punitive damages under § 1681n fail as a matter of law because the Complaint does not plausibly allege that Trans Union acted willfully. Willfully means either knowingly or with reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58-59 (2007). To state a willfulness claim, Plaintiff must allege: (1) Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Id*.

Plaintiff has failed to plead either element of a willfulness claim or any factual support for such a claim. *See* Compl. at ¶ 41. Nothing in the Complaint plausibly suggests that Trans Union acted knowingly, had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language, or how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific task," drawing on the court's "experience and common sense." *Iqbal* at 678-79, 683. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown– that the pleader is entitled to relief." *Iqbal*, 556 at 679 (internal quotations and citations omitted).

Instead, Plaintiff's willfulness theory rests entirely on his legal dispute with Navy Federal Credit Union, rather than Trans Union's reporting of the Account. But a consumer's legal dispute with the data furnisher or disagreement with the outcome of a reinvestigation does not establish willfulness under *Safeco*. *See Chappie v. Energi Pros LLC*, No. CV H-19-4456, 2020 WL 3978398, at *4 (S.D. Tex. June 10, 2020), *report and recommendation adopted*, No. CV H-19-4456, 2020 WL 3972533 (S.D. Tex. July 14, 2020) (conclusory allegations of willfulness are insufficient to support a claim that a defendant willfully violated the FCRA). Accordingly, Plaintiff's willfulness claims should be dismissed with prejudice.

### D. Plaintiff's Complaint Should Be Dismissed with Prejudice Because Any Further Amendment Would Be Futile.

A court may dismiss a claim without leave to amend if amending the complaint would be futile. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). The decision to grant leave to amend a complaint is, of course, committed to the sound discretion of the District Court. *See United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009). However, while leave to amend under Federal Rule of Civil Procedure 15 should be freely given, amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

Plaintiff's FAC should be dismissed with prejudice and without leave to amend because there is no way that Plaintiff could manipulate the facts to state a claim under the FCRA. After Trans Union filed its Motion for Judgment on the Pleadings on September 10, 2026, Plaintiff filed a Motion for Leave to File FAC[3] and his FAC allegedly providing "additional descriptive detail," on September 22, 2026. ECF Nos. 32, 33. Even after having foresight of the arguments contained

[3] Plaintiff's Motion for Leave claims that Trans Union did not consent to his FAC but that is not the case. When asked if Trans Union was opposed counsel for Trans Union asked to review the FAC which was never provided to her.

in Trans Union's Motion for Judgment on the Pleadings, on this exact issue, Plaintiff's FAC could not cure the inherent flaws in his FCRA claims against Trans Union. Plaintiff cannot state a cognizable reporting, or reinvestigation procedures claim against Trans Union since Plaintiff has not alleged a factual inaccuracy in the reporting. Fundamentally, an amendment of the Complaint would be futile because Plaintiff cannot plead the prima facie element of an inaccuracy in Trans Union's reporting. *See Ray*, 2025 WL 1994400, at *2.

Plaintiff cannot distort his allegations to state a viable claim under the FCRA—because there is no question that this case is an impermissible collateral attack on the NFCU account and the alleged inaccuracy that forms the basis of his claims against Trans Union is not objectively and readily verifiable. Simply put, if NFCU and its "security appeals department" both of whom had direct access to the application for credit, account specific documents and Plaintiff's multiple appeal communications and documents, determined that the account was opened by Plaintiff and Plaintiff is responsible for the debt, Plaintiff's dispute is most certainly not one that could have been objectively and readily verified by Trans Union. Furthermore, Trans Union is allowed to rely on information from reliable furnishers such as NFCU. Plaintiff is simply unable to plead the facts in any truthful way that allege viable causes of action against Trans Union. Accordingly, this case should be dismissed with prejudice and without leave to amend.

## VI. CONCLUSION

For all the foregoing reasons, Trans Union respectfully requests that the Court grant its Motion, dismiss Plaintiff's First Amended Complaint with prejudice in its entirety, and award Trans Union its fees and costs incurred in defending this action, including reasonable attorneys' fees, along with such other relief as this Court deems equitable and just.

Dated: October 5, 2026.

Respectfully submitted,

*/s/ Amanda Loughmiller*
Amanda Loughmiller
Texas Bar No. 24028042
aloughmiller@qslwm.com
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
5801 Tennyson Parkway, Suite 440
Plano, Texas 75024
Telephone: (214) 560-5453
Fax: (214) 871-2111
***Counsel for Trans Union LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on the October 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Daniel J. Ciment
daniel@cimentlawfirm.com
Ciment Law Firm, PLLC
4500 Mercantile Plaza Dr., Suite 300
Fort Worth, TX 76137
*and*
Amy Beth Clark
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy, Dr.
Katy, Texas 77494
***Counsel for Plaintiff***

Kimberly A. Lopez
Primary: klopez@bakerdonelson.com
Secondary: swohl@bakerdonelson.com
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
200 S. Orange Avenue, Suite 2050
Orlando, FL 32801
*and*
Amy E. Parette
aparette@bakerdonelson.com
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1301 McKinney Street, Suite 3700
Houston, Texas 77010
***Counsel for Navy Federal Credit Union***

*/s/ Amanda Loughmiller*
**AMANDA LOUGHMILLER**