**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN MURAGE,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION and TRANSUNION,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:25-cv-01398-RWS |

**DEFENDANT TRANS UNION LLC'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Trans Union LLC ("Trans Union") files this Reply in support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). Trans Union moves to dismiss Plaintiff's First Amended Complaint with prejudice in its entirety as Plaintiff fails to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiff's Response in Opposition to Trans Union's Motion ("Response") drives home exactly why the claims in his First Amended Complaint ("FAC") against Trans Union should be dismissed with prejudice and without leave to amend. First, Plaintiff abandons his §§ 1681b(a) and 1681g claims by failing to address them in his Response. Plaintiff's remaining arguments do not overcome Trans Union's showing that (1) Plaintiff fails to identify an objectively and readily verifiable inaccuracy; (2) Plaintiff's claims constitute a collateral attack on the underlying debt; (3) Plaintiff has not pleaded facts supporting a willful violation of the FCRA; and (4) any amendment of the FAC would be futile.

## II. ARGUMENTS AND AUTHORITIES

### A. Plaintiff abandons his §§ 1681b(a) and 1681g claims and such claims should be dismissed.

Trans Union's addresses the FAC's conclusory allegations that Trans Union violated §§ 1681b(a) and 1681g. Plaintiff's FAC does not allege facts to support his claims under these sections of the FCRA. *See generally* ECF No. 33. As noted in Trans Union's Motion, § 1681g requires CRAs to disclose to consumers "all information in the consumer's file" at the time a consumer makes a request for such disclosure and § 1681b(a) limits the permissible purposes for which a CRA may furnish a consumer report to a third party. *See* ECF No. 37, p. 12; 15 U.S.C. §§ 1681b(a), 1681g(a)(1). Plaintiff's Response does not address Trans Union's arguments concerning either claim. Plaintiff has therefore abandoned those claims, and his §§ 1681b(a) and 1681g claims should be dismissed with prejudice. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff "failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss," and "[her] failure to pursue this claim beyond her complaint constituted abandonment"); *see also Ferris v. Blucora, Inc. Key Leadership Change of Control Severance Plan*, 736 F. Supp. 3d 506, 519 (E.D. Tex. June 10, 2024) (noting that "facing a motion to dismiss is the precise time that a party should respond[;] [f]ailure to do so may constitute abandonment of a claim"); *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 733 (E.D. Tex. Sept. 24, 2024) (dismissing claims that Plaintiff did not address in response to certain defendants' motions); *Henderson v. Jasper City Police Dep't*, No. 1:23-CV-136-MJT-CLS, 2024 WL 1565328, at *2 (E.D. Tex. Mar. 15, 2024) ("[p]laintiff's lack of response to [d]efendants' motion to dismiss constitute an abandonment"); *Sims v. Nacogdoches Cnty.*, No. 9:21-CV-251, 2022 WL 3207460, at *3 (E.D. Tex. July 18, 2022) (same). Trans Union respectfully requests that the Court dismiss Plaintiff's §§ 1681b(a) and 1681g claims with prejudice.

### B. Plaintiff fails to identify an objectively and readily verifiable inaccuracy.

Plaintiff's Response argues that Trans Union's Motion mischaracterizes the allegations in his FAC. ECF No. 40 ¶ 5. Plaintiff states that "this is not a case in which Plaintiff's has an account and then disagrees with the lender on a few of the charges. Instead, Plaintiff has consistently stated he never had a Navy Federal Credit Union account and furthermore, that the address associated with the NFCU account is not his." *Id*. Plaintiff's Responses misses the mark as Trans Union's Motion recognizes that Plaintiff alleges the NFCU Account was fraudulent due to identity theft. ECF No. 37 p. 1-2, 5. Trans Union's argument is that Plaintiff's contention that identity thieves opened the Account instead of him fails to identify a factual inaccuracy that is objectively and readily verifiable, as required by both his §§ 1681e(b) and 1681i claims. ECF No. 37 p. 4-9.

Plaintiff's Response argues that when a consumer reporting agency ("CRA") is sued for violating § 1681i, "the court is called upon to determine if the CRA could have discovered an error in a particular report through a reasonable investigation" and that a § 1681i claim is "proper when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." ECF No. 40 ¶ 22. The question here is whether the alleged inaccuracy in the reporting of the NFCU Account was objectively and readily verifiable by Trans Union. ECF No. 37 p. 4-9. Plaintiff's FAC alleges that he contacted NFCU insisting that he did not open the Account. ECF No. 33 ¶ 9. Plaintiff further alleges that he directly provided NFCU with an FTC Identity Theft Affidavit and police report, but they refused to remove the debt from his credit reports. *Id.* ¶¶ 12, 14-15. He also alleges that he appealed NFCU's decision that he was responsible for the debt to its security appeals department, but his appeals were denied. *Id.* ¶¶ 17-20. Plaintiff further alleges that when he disputed the Account with the CRAs, NFCU verified it. *Id.* ¶¶ 9, 11, 15-17, 22.

NFCU was in a better position than Trans Union to investigate whether Plaintiff opened the Account. According to the FAC, NFCU continued to verify the Account after Plaintiff disputed

it and denied his appeals. *Id*. ¶¶ 9, 11-12, 14-20, 22. Plaintiff's FAC does not identify facts explaining how Trans Union could have objectively and readily resolved the dispute over who opened the Account. *See generally* ECF No. 33. He sets forth no facts which identify any information that Trans Union was privy to that NFCU was not. *Id.* ¶¶ 12, 15-17. In fact, Plaintiff's FAC pleads that NFCU had more relevant information than he provided to Trans Union in his disputes. *Id.* ¶¶ 9, 13, 17-19. Plaintiff made several telephone calls to NFCU claiming that he did not open the Account, but they continued to hold him responsible for the charges. *Id.* ¶¶ 9, 13-14, 19-20, 22. Realizing he was failing to convince NFCU that he did not open the Account, Plaintiff began pleading with Trans Union for a more favorable result. He contends that Trans Union should have determined that the Account was fraudulent despite NFCU's continued verification. On the facts alleged, resolving that dispute would require Trans Union to determine whether Plaintiff or someone else opened the Account, notwithstanding NFCU's continued verification. Plaintiff has not alleged how that determination could be made through an objective and readily verifiable inquiry.

Plaintiff' Response argues that Trans Union removed the address associated with the alleged fraudulent account but did not remove the account itself. ECF No. 40 ¶ 6, 8, 11, 13-14, 30. Accepting Plaintiff's allegations that he never lived at the address and that it was removed from his credit file, the removal of the address did not, by itself, resolve the separate question of who opened the Account. An address associated with an account may be inaccurate without establishing that the account itself is fraudulent. Plaintiff does not allege that Trans Union determined the Account resulted from identity theft when the address was removed. To the contrary, he alleges that NFCU continued to verify the Account after he disputed it. ECF No. 33 ¶¶ 10–11, 33.

Plaintiff's Response also seeks to distinguish case law cited by Trans Union stating that four cases relied on in Trans Union's Motion for its objectively and readily verifiable argument

are "not on point to Plaintiff's facts." ECF No. 40 ¶ 46. Plaintiff attempts to distinguish Trans Union's reliance on *Rozov*, *Mader*, *Dorsey* and *Reyes*. *Id*. ¶¶ 47-51. Plaintiff's Response claims that *Rozov* is distinguishable because it involves an allegation of fraud involving a check and *Mader* is distinguishable because it involved a balance owed on a student loan yet Plaintiff on the other hand alleges "a false statement in that he has no account with NFCU" and "did allege factual inaccurate reporting." *Id*. ¶¶ 47-48. But identifying factual differences does not answer whether the alleged inaccuracy in this case was objectively and readily verifiable by Trans Union. Plaintiff argues that *Dorsey* is distinguishable because it is a motion for summary judgment decision and because the motion was denied. *Id*. ¶ 49. Trans Union relies on *Dorsey* for its discussion of objective and readily verifiable inaccuracies, not for its disposition on a different factual record. ECF No. 37 p. 6.

Plaintiff attempts to distinguish *Reyes* because Reyes's dispute concerned allegedly fraudulent charges on an account she acknowledged, while Plaintiff disputes opening the Account itself. ECF No. 40 ¶ 51. Although the disputes are factually different, *Reyes* remains instructive. The *Reyes* Court determined that an inaccuracy is necessary for a viable § 1681i claim and that the alleged inaccuracy must be objectively and readily verifiable. ECF No. 37 p. 4-5, 7-8. In *Reyes* and other cases cited in Trans Union's Motion, courts have recognized that allegations involving identity theft and/or fraud may require determinations that are not objectively and readily verifiable by a CRA. ECF No. 37 p. 5-7. Trans Union's Motion argues that Plaintiff's allegations present such a dispute: Plaintiff denies opening the Account, while NFCU allegedly continued to verify it after receiving his disputes and supporting documents. *See generally* ECF No. 37. The FAC does not explain how Trans Union could objectively and readily resolve that dispute, and his claims should be dismissed with prejudice.

**C. Plaintiff's collaterally attacks Navy Federal Credit Union's persistent decisions that Plaintiff is liable for the debt.**

Trans Union's Motion argues alternatively that Plaintiff is collaterally attacking the NFCU debt that Plaintiff claims is not his due to alleged identity theft. ECF No. 37 p. 9-11. Plaintiff's Response argues that the collateral attack principle discussed in Trans Union's Motion does not apply in cases where the legal dispute itself is ownership of the account. ECF No. 40 ¶¶ 52-53. He claims that when there is no underlying debt there cannot be a legal dispute. *Id*. ¶¶ 54-55. This argument fails on its face. First, there is clearly a legal dispute between Plaintiff and NFCU as to whether Plaintiff opened the account and therefore legally responsible for the charges. ECF No. 33 ¶¶ 6-22. As plead in the FAC, Trans Union's Motion and above in Section B, Plaintiff claims he did not open the NFCU account but that it was opened in his name by identity thieves. NFCU after receiving Plaintiff's alleged proof that he did not open the Account, engaging in telephone conferences with Plaintiff, processing multiple direct disputes and appeals from Plaintiff determined that Plaintiff did open the account at issue in this case. *Id*. ¶¶ 9, 12-20, 22. Dissatisfied with NFCU's determination that the debt is valid, Plaintiff files this lawsuit collaterally attacking the validity of the debt previously determined by NFCU to be due and owing. *Id*. As part of its reinvestigation, Trans Union contacted NFCU who verified that Plaintiff opened the account and is responsible for the charges. ECF No. 33 ¶¶ 9, 11, 14, 17, 20, 22. Plaintiff seeks to hold Trans Union liable for continuing to report the Account while his dispute with NFCU remains unresolved. *Id*. ¶¶ 32-33.

While many of the collateral attack opinions cited in Trans Union's Motion involve facts concerning whether an existing debt is legally enforceable and if Plaintiff is responsible for particular charges on an account that he/she admits they opened, these cases certainly do not foreclose that a consumer can impermissibly collaterally attack a debt on an account which the consumer claims not to have opened. The Account was opened in Plaintiff's name, charges were made and the debt was incurred so there is technically an existing debt in the matter at hand. ECF

No. 33 ¶¶ 8, 23. Plaintiff and NFCU disagree as to the legal validity of the debt and who is responsible but Trans Union is not required to referee such dispute in federal court. *See* ECF No. 37 p. 10-11. Plaintiff's FAC constitutes an impermissible collateral attack on the underlying NFCU debt and his claims against Trans Union should be dismissed with prejudice.

Plaintiff attempts to distinguish one of the many cases cited in Trans Union's Motion which supports its collateral attack argument. Plaintiff's Response addresses only the *Glass* case stating that there was no dispute as to whether the debt existed because Glass admitted she had an account with the furnisher. Again, Plaintiff misses the point of Trans Union's argument and the case law cited in its Motion. *See id.*

**D. Plaintiff has not met the willfulness standard.**

Plaintiff's Response briefly acknowledges Trans Union's robust argument and authorities regarding Plaintiff's failure to state a claim for willful violation of the FCRA. ECF No. 40 ¶¶ 58-59. Plaintiff claims the factual support for his willfulness claim is "repeated and realleged" in the willfulness section of the FAC. ECF No. 40 ¶58. Trans Union agrees that the willfulness section of the FAC states that Plaintiff "repeats and realleges" the factual allegations contained in paragraphs 1-34. However, paragraphs 1-34 of the FAC wholly fail to allege any facts that may even tend to show that Trans Union acted with knowing or reckless disregard of the FCRA. Nothing in the FAC plausibly suggests that Trans Union acted knowingly, had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language, or how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. Plaintiff's Response vaguely purports to claim a "reasonable inference" that Trans Union acted willfully because the FAC alleged that Trans Union received a detailed dispute which was allegedly supported by "evidence" of an inaccuracy and a bad address so Trans Union's actions must have been willful. ECF No. 40 ¶ 59. This argument falls drastically

short of the high bar to establish willfulness. While Plaintiff's Response includes a willfulness section, Trans Union argues that Plaintiff's efforts to defend its willfulness claim are akin to abandonment and respectfully request that the Court dismiss Plaintiff's claims for willful violations with prejudice.

**E. Any further amendment would be futile.**

Further amendment would be futile because there are no set of facts which would allow Plaintiff to state a claim under the FCRA. This is established by the contents of Plaintiff's FAC which was filed over a week after Plaintiff became privy to the same arguments contained in Trans Union's Motion for Judgment on the Pleadings filed on September 10, 2026, and which are reiterated in its Motion. ECF Nos. 32, 37. Plaintiff's Response, also akin to abandonment, merely states that Plaintiff has "already alleged a specific factual inaccuracy – he does not have an NFCU account and yet one was reported by Trans Union" which seems to concede that Plaintiff's FAC has alleged all relevant and existing facts. ECF No. 40 ¶ 61. Because any amended complaint would also be subject to dismissal, Trans Union respectfully request that Plaintiff's FAC be dismissed with prejudice and without leave to amend.

## III. CONCLUSION

For the foregoing reasons, Trans Union's Motion to Dismiss Plaintiff's First Amended Complaint should be granted in its entirety with prejudice and without leave to amend.

Dated: October 26, 2026.

Respectfully submitted,

*/s/ Amanda Loughmiller*

Amanda Loughmiller
Texas Bar No. 24028042
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
5801 Tennyson Parkway, Suite 440
Plano, Texas 75024
Telephone: (214) 560-5453
Fax: (214) 871-2111
***Counsel for Trans Union LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of October 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Daniel J. Ciment
Ciment Law Firm, PLLC
4500 Mercantile Plaza Dr., Suite 300
Fort Worth, TX 76137
*and*
Amy Beth Clark
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy, Dr.
Katy, Texas 77494
***Counsel for Plaintiff***

Kimberly A. Lopez
Primary: klopez@bakerdonelson.com
Secondary: swohl@bakerdonelson.com
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
200 S. Orange Avenue, Suite 2050
Orlando, FL 32801
*and*
Amy E. Parette
aparette@bakerdonelson.com
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1301 McKinney Street, Suite 3700
Houston, Texas 77010
***Counsel for Navy Federal Credit Union***

*/s/ Amanda Loughmiller*
**AMANDA LOUGHMILLER**